S.A.R.L Aquatonic Laboratoires PBE v. Marie Katelle, Inc.                                                                         Doc. 44

1  **WO**
2
3
4
5                              **NOT FOR PUBLICATION**
6                    IN THE UNITED STATES DISTRICT COURT
7                            FOR THE DISTRICT OF ARIZONA
8
9  S.A.R.L. Aquatonic - Laboratoires    )   No. CV 06-640-PHX-FJM
   PBE,                                 )
10                                      )   **ORDER**
                Plaintiff,              )
11                                      )
   vs.                                  )
12                                      )
                                        )
13 Marie Katelle, Inc.,                 )
                                        )
14              Defendant.              )
                                        )
15 _____ )

16
        The court has before it plaintiff's motion for summary judgment (doc. 29), statement
17
   of facts (doc. 30) and notice of errata (doc. 31), defendant's "Response to Motion for
18
   Summary Judgment - and - Defendant's Cross-Motion for Summary Judgment" (doc. 34) and
19
   statement of facts (doc. 35), plaintiff's reply (doc. 36) and plaintiff's "Response to
20
   Defendant's Separate Statement of Facts" (doc. 39); plaintiff's "Motion to Strike a Portion of
21
   Defendant's Statement of Facts" (doc. 37), defendant's response (doc. 40) and plaintiff's reply
22
   (doc. 43); plaintiff's "Motion to Strike Defendant's Cross-Motion for Summary Judgment"
23
   (doc. 38), defendant's response (doc. 41), and plaintiff's reply (doc. 42). For the reasons
24
   stated below, we grant plaintiff's motion for summary judgment, and deny defendant's cross-
25
   motion for summary judgment. We deny plaintiff's "Motion to Strike a Portion of
26
27
28

Dockets.Justia.com

Defendant's Statement of Facts" and plaintiff's "Motion to Strike Defendant's Cross-Motion for Summary Judgment" on grounds of mootness.[1]

**I.**

On or about September 1, 1999, plaintiff, a French corporation, and defendant, a U.S. corporation with its principal place of business in Arizona, entered into a distribution contract. The parties agreed that defendant would market plaintiff's products and services within the United States, Mexico, Canada, and those countries' overseas territories. They also agreed that any dispute relating to the contract would be resolved in the courts of Evreux, France, through application of French law.

A dispute arose, and after a hearing held on March 27, 2003, the Business Court of Evreux, France ("Business Court"), ordered defendant to transfer U.S. Trademark No. 2479612 ("defendant's trademark") to plaintiff. The Business Court further stated that if defendant failed to timely transfer its trademark, defendant would be subject to a penalty of 1,000 Euros per day. On September 6, 2005, the Court of First Instance of Evreux ("Court of First Instance") found that defendant owed 416,000 Euros in late penalties based on its failure to transfer the trademark, and ordered defendant to pay plaintiff that amount.

**II.**

On a motion for summary judgment under Rule 56, Fed. R. Civ. P., the moving party carries the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). When the moving

---

[1] We need not address plaintiff's "Motion to Strike a Portion of Defendant's Statement of Facts" because we grant plaintiff's summary judgment motion without striking any aspect of defendant's statement of facts. We deny plaintiff's "Motion to Strike Defendant's Cross-Motion for Summary Judgment" because defendant's cross-motion simply incorporates the arguments presented in its response to plaintiff's motion for summary judgment, each of which we reject. See Defendant's Response to Plaintiff's Motion to Strike at 2 (stating that defendant's cross-motion "merely incorporates the same arguments, points and authorities contained in Defendant's Response to Plaintiff's Motion for Summary Judgment"). In any event, motions to strike under Rule 12(f), Fed. R. Civ. P. are limited to pleadings under Rule 7(a), Fed. R. Civ. P., and not motions and other papers under Rule 7(b), Fed. R. Civ. P.

party satisfies this initial burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. Id. at 324, 106 S. Ct. at 2553-54. A party opposing summary judgment "may not rest upon mere allegation or denials of his pleading," but must set forth specific facts, by way of affirmative evidence, "showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514 (1986) (citing Fed. R. Civ. P. 56(e)).

Plaintiff moves for summary judgment seeking enforcement of the French courts' judgments that defendant (1) transfer its trademark to plaintiff and (2) pay plaintiff 414,000 Euros. See Motion for Summary Judgment at 1-2.[2] State law governs the recognition and enforcement of foreign country judgments. See, e.g., Banque Libanaise Pour Le Commerce v. Khreich, 915 F.2d 1000, 1003 (5th Cir. 1990). Arizona recognizes a foreign judgment if:

> There has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment.

Alta. Secs. Comm'n v. Ryckman, 200 Ariz. 540, 545, 30 P.3d 121, 126 (App. 2001) (quoting Hilton v. Guyot, 159 U.S. 113, 202, 16 S. Ct. 139, 158 (1895)). Recognizing that the Hilton standards are somewhat elusive, Arizona applies the Restatement (Third) of the Foreign Relations Laws of the United States (1987) ("Restatement") to determine whether a "full and fair trial" was had. Id..

"The Restatement creates a strong presumption of the validity of a foreign judgment." Id. "A final judgment of a court of a foreign state granting or denying recovery of a sum of money . . . or determining interests in property, is conclusive between the parties, and is entitled to recognition in courts in the United States" unless one of the Restatement § 482

---

[2] Plaintiff requests 414,000 Euros because the 416,000 Euros judgment is offset by plaintiff's obligation to pay defendant 2,000 Euros. See Motion for Summary Judgment at 3.

exceptions apply. Restatement § 481. That is, so long as a foreign judgment is a final judgment within the meaning of Restatement § 481, it is presumptively entitled to recognition "unless one of the exceptions in § 482 requires or permits the court to decline to recognize it." Alta. Secs. Comm'n, 200 Ariz. at 545, 30 P.3d at 126. A judgment entitled to recognition may be enforced. Restatement § 481(2).

A.

A foreign judgment is final if it is not subject to additional proceedings, other than execution, in the court in which it was rendered. Restatement § 481 cmt. e. Similarly, a judgment entered in a French court is final and enforceable "if it is not subject to any right of recourse which might stay its enforcement, or if it is vested with provisional enforcement." Article 504, The French Code of Civil Procedure in English 96 (Christian Dodd trans., 2004) (attached to Motion for Summary Judgment). Proof of a French judgment's finality arises from "the acceptance of the judgment by the unsuccessful party," or "from the notification of the judgment and a certificate allowing it to be established, in conjunction with this notification, that, within the time limit there was no objection, appeal or appeal to the Court of Cassation where such an appeal would suspend its enforcement." Id.

Plaintiff argues that the judgments are final, see Motion for Summary Judgment at 4-5, and we agree. On October 21, 2003, the Rouen Appeal Court affirmed both the transfer and penalty aspects of the Business Court's holding. Rouen Appeal Court Judgment, Plaintiff's Statement of Facts (PSOF) Exhibit 7. On September 6, 2005, the Court of First Instance rejected defendant's argument that the October 21, 2003 order was unenforceable because defendant did not receive notice of it, and entered judgment for plaintiff based on defendant's failure to transfer the trademark. Court of First Instance Judgment, PSOF Exhibit 9. The Court of First Instance also ordered defendant to pay plaintiff 416,000 Euros for defendant's failure to timely transfer its trademark. Id. Defendant was notified of the Court of First Instance's judgment on September 6, 2005. Id. Defendant had fifteen days from the date of notification to appeal the judgment. Id. An affidavit by the lawyer who represented

plaintiff in the French proceedings states that there is no recorded appeal of the September 6, 2005 judgment. See Affidavit of Yves Ridel (translated to English by Diane Goullard Parlante), PSOF Exhibit 13. Therefore, according to Ridel, the judgment is "legally binding." Id.

The September 6, 2005 judgment affirmed the lower court's judgment regarding transfer of defendant's trademark, and held that defendant owes plaintiff 416,000 Euros. Defendant's failure to appeal that decision, which is no longer subject to any right of recourse, renders the judgments regarding the trademark and the penalty final.[3]

Defendant does not contest the finality of the Court of First Instance's September 6, 2005 judgment. Rather, it argues that it has yet to receive a ruling from a November 2006 hearing before the Rouen Court pertaining to "the pending action between the parties," and that therefore, "the French proceedings have not been concluded." Response to Motion for Summary Judgment - and - Defendant's Cross-Motion for Summary Judgment ("Response") at 7. However, the fact that there may be additional proceedings relating to the parties' contract does not render the judgments plaintiff seeks to enforce any less final. Contrary to defendant's assertion, the Restatement does not require that all proceedings between parties be final. Rather, the judgments a party seeks to enforce must be final, and the judgments themselves may not be subject to additional proceedings. See Restatement § 481 cmt. e. Therefore, the fact that the French court retained jurisdiction "to issue further orders," Response at 7, is immaterial.

---

[3] The finality of the French judgments is a question of foreign law. In deciding that question, we may consider the translated versions of the French Code of Civil Procedure and translated versions of the judgments, which plaintiff attached to its statement of facts. See Fed. R. Civ. P. 44.1. Although defendant denies that plaintiff's translations are accurate, see Defendant's Statement of Facts (DSOF) at 2 (citing Defendant's Interrogatory Responses to Plaintiff's Request for Admissions Nos. 6, 9 and 13, attached to PSOF as Exhibit 3), it does not challenge the portions of the translations we rely on, see DSOF at 2-5.

Moreover, defendant does not offer any affirmative evidence in support of its contentions, but simply cites to portions of its statement of facts that do no more than deny plaintiff's statement of facts. Denials are insufficient to establish the existence of a genuine issue of material fact. Therefore, we grant plaintiff's motion summary judgment as to the issue of finality.

B.

Next, we address defendant's arguments for nonrecognition of the foreign judgments. First, defendant contends that the courts that entered the judgments at issue did not have subject matter jurisdiction over defendant's trademark. Response at 3-6. We are not required to deny recognition to a judgment of court that did not have jurisdiction over the subject matter of the action, but may do so in the interests of justice. Restatement § 482(2); § 482 cmt. a. In support of its argument, defendant cites to 15 U.S.C. § 1121(a), which provides that United States District Courts and territorial courts have original jurisdiction over all actions arising under the Trademark Act, and that "the U.S. Court of Appeals for the District of Columbia shall have appellate jurisdiction" over the same. However, defendant does not establish that our courts have exclusive jurisdiction over its trademark. Whether French courts have jurisdiction over a particular subject matter is a question of French law that defendant does not address. Therefore, we do not deny recognition on this ground.

Second, defendant contends that we should not recognize the French judgments because "Plaintiff has failed to produce any evidence to establish that a French Court would enforce a U.S. Judgment which ordered a French company to assign a French trademark to a U.S. company." Response at 5 (citing Hilton, 159 U.S. 113, 16 S. Ct. 139). Hilton held that French judgments are not entitled to reciprocity because in France, the merits of foreign judgments are reviewed by French courts, and are allowed, "at the most, no more effect than of being prima facie evidence of the justice of the claim." 159 U.S. at 227, 16 S. Ct. at 168.

However, although the reciprocity aspect of the Hilton holding has not been expressly overruled, "it is no longer followed in the great majority of State and federal courts in the

United States." Restatement § 481 cmt. d. Indeed, since 1964, foreign judgments in France are no longer reexamined on the merits as a condition of enforcement. § 481 RN 6(c).[4] Now, foreign judgments are entitled to recognition or enforcement in France so long as several conditions, including jurisdictional and procedural requirements, are met. Id. Therefore, because reciprocity is no longer a factor most courts look to in enforcing foreign judgments and because the facts that informed Hilton's reciprocity conclusion have changed, we reject this argument for nonrecognition.

Third, defendant argues that we should not enforce the French judgments because "trademark rights are territorial," and "Plaintiff has cited no legal authority supporting the enforcement by a United States Court of a foreign judgment ordering the transfer of a United States Trademark to a party of such foreign country." Response at 5-6. (citing Calzaturificio Rangoni S.p.A. ("Rangoni") v. U.S. Shoe Corp., 868 F. Supp. 1414 (S.D.N.Y. 1994)). The Rangoni plaintiff, an Italian corporation, brought suit in federal court "for trademark infringement and related unfair trade practices" and "a judgment that it is the sole, exclusive, and equitable owner of the distinctive name, brand and mark AMALFI." Id. at 1417.

A previous Italian judgment rendered by an Italian court held that the Rangoni defendant's "use of the AMALFI mark in the United States was unlawful." Id. The Rangoni plaintiff sought to avoid relitigation of its right to the trademark by alleging that the Italian judgment on that issue was preclusive. Id. In determining the plaintiff's right to a U.S. Trademark in a U.S. Court, Rangoni held that an Italian court's application of Italian law was not determinative to the issues before it. Here, neither plaintiff nor defendant seek adjudication of federal trademark rights, and neither party asserts issue preclusion.

---

[4] See also Chabert v. Bacquie, 694 So. 2d 805, 815 (Fla. 4th Dist. Ct. App. 1997) (stating that Hilton v. Guyot "is of doubtful value today on the issue of French reciprocity" because it was based in part "on 17th century French monarchial law, which was of course before the French Revolution and even before the creation of the current French republic . . . [w]hatever may have been the facts on reciprocity in 1895 when Hilton was decided, they are decidedly different today.").

Therefore, the decision in Rangoni is distinguishable and unpersuasive, and does not give us reason to disregard the French judgments.

Next, defendant contends that A.R.S. § 12-549 bars enforcement of the French judgments. Response at 6. A.R.S. § 12-549 provides that "[a]n action upon a judgment or decree rendered in another state or foreign country shall be barred if by the laws of such state or country such action would there be barred and the judgment or decree is incapable of being otherwise enforced there." However, defendant cites to 15 U.S.C. § 1121 for the proposition that French courts would not enforce the judgments. Yet whether the laws of France would bar enforcement of the French judgments is a question of French law. The French courts' failure to apply 15 U.S.C. § 1121 does not establish that the French judgments would not be enforced in France. Therefore, defendant's A.R.S. § 12-549 argument does not give us reason to decline to recognize the French judgments.

Fifth, defendant argues that the judgments are not entitled to recognition because the French Business Courts that decided the parties' disputes are "not sufficiently fair and impartial." Response at 8. The Restatement provides that we may not recognize a judgment of a foreign state rendered "under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law." § 482(1)(a). There is sparse authority interpreting this ground for nonrecognition. However, a survey of the cases that have denied recognition on this ground have done so when the rendering nations' judicial systems are in an obvious state of disarray. See, e.g., Bridgeway Corp. v. Citibank, 201 F.3d 134, 141-142 (2d Cir. 2000) (refusing to enforce a Liberian judgment because the party opposing enforcement came forward with "sufficiently powerful and uncontradicted documentary evidence describing the chaos within the Liberian judicial system during the period of interest to this case," including U.S. State Department Country Reports); Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1413 (9th Cir. 1995) (refusing to enforce an Iranian judgment because the Iranian system did not comport with due process, and because the defendant, the sister of the former Shah of Iran, "could not expect fair treatment from the courts of Iran, could not

1 personally appear before those courts, could not obtain proper legal representation in Iran, and could not even obtain local witnesses on her behalf").

Defendant does not argue that the French Courts that rendered the judgments at issue here were as corrupt as the judicial systems whose judgments other U.S. Courts have declined to recognize. Instead, defendant presents the following "facts" as reason for non-enforcement: (1) the French Business Court has judges who are business persons, not lawyers; (2) there have been "a number of cases involving corrupt judges misusing their roles as judges to insure advantages for their businesses;" (3) the French Business Court is "open to abuse as there is a temptation by lay judges to use information for their personal business advantage." (4) "the system is difficult to police;" (5) "[e]fforts have been ongoing to reform the system;" (6) the taint of bias from local business persons ruling on United States trademark rights between a U.S. corporation and a French corporation is apparent on in its face" and is "heightened by the fact that the ruling from the French Business Court was issued within five days after the United States military operations began in Iraq." Response at 8.

We first address defendant's contention that we can take judicial notice "of the fact that the government of France and indeed the French people were vehement in their opposition to the U.S. invasion of Iraq." Response at 8. Facts regarding the impartiality of members of the French courts are adjudicative facts. See In re Asbestos Litigation, 829 F.2d 1233, 1257 (3d Cir. 1987) (stating that "adjudicative facts are those to which the law is applied in the process of adjudication") (citation omitted). We may only take judicial notice of adjudicative facts that are not subject to reasonable dispute. Fed. R. Evid. 201(b). The facts for which defendant requests judicial notice are inherently subjective, and subject to reasonable dispute. Yet defendant has failed to present any evidence in support of its conclusory statements. We reject defendant's contention outright.

Defendant's remaining contentions regarding bias amount to little more than generalized conclusions. Further, they neither highlight due process failures during the time period in which defendant was subject to the French courts' jurisdiction, nor suggest that the

- 9 -
Case 2:06-cv-00640-FJM   Document 44   Filed 06/01/2007   Page 9 of 10

1 French courts lacked personal jurisdiction over the defendant. In the context of *forum non*
2 *conveniens*, at least one federal court has determined that "French courts have a rigorous
3 judicial system that seeks to promote fair proceedings and debate." <u>Gambra v. Int'l Lease</u>
4 <u>Fin. Corp.</u>, 377 F. Supp. 2d 810, 817 (D. Cal. 2005). We reject defendant's arguments to the
5 contrary.

6 Finally, defendant contends that we should not enforce the French judgments because
7 they are repugnant to "the policy of the United States." <u>Response</u> at 9. Defendant argues that
8 "the French Court's efforts to declare the legal status of a duly registered U.S. trademark,"
9 are as repugnant to U.S. policy as a foreign judgment that infringes on "a U.S. corporation's
10 right of free speech." <u>Id.</u> The basis of defendant's repugnancy argument is the French courts'
11 failure to apply U.S. law. However, defendant does not explain how the French judgments
12 contradict U.S. law, let alone how the judgments are repugnant to U.S. policy. Defendant's
13 conclusory statements do not establish a genuine issue of material fact.

14 We conclude that the French judgments are entitled to recognition; therefore, they
15 may be enforced.

16 **THEREFORE, IT IS ORDERED GRANTING** plaintiff's motion for summary
17 judgment (doc. 29). **IT IS ALSO ORDERED DENYING** defendant's cross-motion for
18 summary judgment (doc. 34). **FINALLY, IT IS ORDERED DENYING** plaintiff's "Motion
19 to Strike a Portion of Defendant's Statement of Facts" (doc. 37) and plaintiff's "Motion to
20 Strike Defendant's Cross-Motion for Summary Judgment" (doc. 38).

21 DATED this 31st day of May, 2007.

_____
Frederick J. Martone
United States District Judge